# In the United States Court of Federal Claims

No. 22-133
(Filed: November 19, 2025)

```
*****************************************
STACY WHEELER,                          *
                                        *
            Plaintiff,                  *
                                        *
       v.                               *
                                        *
THE UNITED STATES,                      *
                                        *
            Defendant,                  *
                                        *
       and                              *
                                        *
ASHLEY B. WHEELER,                      *
                                        *
            Defendant-Intervenor.       *
*****************************************
```

*Patrick J. Hughes*, Patriots Law Group of Lyons & Hughes, P.C., Suitland, MD, counsel for Plaintiff.

*Daniel Bertoni*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Holly Bryant*, U.S. Army Legal Services Agency, of counsel.

*John C. Brinkerhoff Jr.*, Jones Day, Washington, DC, counsel for Defendant-Intervenor. With whom was *Jonathan E. DeWitt*, Lehotsky Keller Cohn LLP, Washington, DC, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

On February 9, 2022, Stacy Wheeler, the former spouse of deceased United States Army Master Sergeant Joshua Wheeler ("MSG Wheeler") filed a complaint against the United States alleging her entitlement to an annuity under the Survivor Benefit Plan ("SBP"). Before the Court is Stacy Wheeler's second motion for judgment on the administrative record ("MJAR") pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") and the government's second motion to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1) and cross-MJAR. Also before the Court are filings submitted by defendant-intervenor Ashley Wheeler—MSG Wheeler's spouse at the time of his death. For the reasons set forth below, the Court finds that Stacy Wheeler's complaint was filed within the statute of limitations,

that the latest decision by the Army Board for Correction of Military Records ("ABCMR") was rational, and that Stacy Wheeler is entitled to an annuity under the SBP. Accordingly, the Court **GRANTS** Stacy Wheeler's second MJAR and **DENIES** the government's second motion to dismiss and cross-MJAR.

## I.    BACKGROUND[1]

Stacy Wheeler married MSG Wheeler on July 19, 1998. AR 81.[2] The Moore County District Court ("Moore County court") in North Carolina entered a judgment of divorce on October 25, 2011. AR 1-2. In the same order, the Moore County court noted, *inter alia*, that claims and counterclaims filed under a different case number (including those regarding MSG Wheeler's military pension and SBP coverage) had been severed and preserved for later resolution. AR 2. These claims and counterclaims were addressed by the Moore County court in a May 2, 2013, final consent order, which stated that "[t]he parties entered into negotiations by and through counsel resulting in an agreement which resolved all issues in controversy in this action . . . ." AR 3. In relevant part, the final consent order provided as follows:

> A military pension division order [("MPDO")] shall be entered which allocates fifty percent (50%) of the marital portion of [MSG Wheeler's] military retired pay to [Stacy Wheeler] with this order reflecting a date of marriage of July 19, 1998, a date of separation of July 22, 2010 and [MSG Wheeler's] active duty military service beginning January 11, 1995. The marital portion shall be defined as a fraction whose numerator represents the number of months that the parties were married to and living with one another and the denominator being the total number of months of [MSG Wheeler's] creditable military service. [Stacy Wheeler] may elect to receive SBP coverage for her portion of the military retirement but she shall be required to pay for such coverage. [Stacy Wheeler's] counsel shall prepare the MPDO.

AR 5. The order also stated that the Moore County court "continues to have jurisdiction of the parties and of the subject matter of this action," AR 9, and "retains jurisdiction over this matter to enter an MPDO," AR 11.

On October 5, 2013, five months after the May 2, 2013, order, MSG Wheeler married Ashley Wheeler. Compl. [ECF 1] at 2.[3] Approximately two years later, on October 22, 2015,

---

[1] To maintain consistency, this background section borrows heavily from the background section in the Court's September 14, 2023, Opinion and Order, which resolved the government's first motion to dismiss and the government's and Stacy Wheeler's first cross-MJARs. *See Wheeler v. United States*, 167 Fed. Cl. 345, 347-49 (2023). It has, however, been updated to include additional relevant facts and to reflect developments since the Court's prior decision.

[2] The Court cites to the Administrative Record filed by the government at [ECF 9] and [ECF 43] as "AR ___."

[3] Except for the Administrative Record, all references to page numbers within documents filed electronically with the Court refer to the page numbers generated by the CM/ECF system.

MSG Wheeler was killed while serving in Iraq. AR 13. No MPDO had been entered as of that date. [ECF 1] at 2. Following MSG Wheeler's death, Ashley Wheeler, his surviving spouse, began receiving annuity payments under his SBP. *Id.*

On March 21, 2016, Stacy Wheeler moved to substitute Ashley Wheeler, the administrator of MSG Wheeler's estate, as the defendant in the Moore County court case. AR 36, 40. The Moore County court granted the motion on April 25, 2016, stating that "the nature of this action is such that the cause of action survives the death of [MSG Wheeler]." AR 100. On April 29, 2016, Stacy Wheeler moved for clarification of the May 2, 2013, final consent order. AR 102. On June 2, 2016, the Moore County court issued a clarifying order stating that "[i]t was the intent of the parties for [Stacy Wheeler] to be the former-spouse [SBP] beneficiary of [MSG] Wheeler's military retirement benefits," AR 110-11. However, the court also noted that due to faulty language, "[n]o duty to elect former spouse SBP coverage was stated in the May 2, 2013 Order and therefore, [Stacy Wheeler's] SBP coverage automatically terminated upon the parties' divorce." AR 110. Therefore, the court revised the May 2, 2013, order to include the following language: **"[Stacy Wheeler] as the 'former spouse' is awarded the survivor's benefits in [MSG Wheeler's] military retirement (SBP). [MSG Wheeler] will promptly elect former spouse survivor benefit plan coverage for [Stacy Wheeler]."** AR 111 (emphasis in original). The June 2, 2016, clarifying order also "authorize[d] [Stacy Wheeler] to submit a 'deemed election' under 10 U.S.C. § 1450(f)(3)(A) [] to allow [Stacy Wheeler] to obtain SBP coverage." *Id.* It further instructed that "[Stacy Wheeler] shall take no steps to seek disgorgement of any benefits received by Ashley Wheeler prior to the entry of this Consent Order" and that "[i]f required by [the Defense Finance and Accounting Service ("DFAS")], by the [ABCMR], or any federal agency, Ashley Wheeler agrees to and shall sign a notarized Affidavit relinquishing her rights to SPB benefits in favor of [Stacy Wheeler]." *Id.* The June 2, 2016, clarifying order was signed by Ashley Wheeler, as administrator of the estate of MSG Wheeler, and Stacy Wheeler. *Id.* Both Ashley Wheeler and Stacy Wheeler were represented by counsel. *Id.*

On June 13, 2016, Stacy Wheeler submitted an "SBP Request for Deemed Election" to DFAS for coverage under MSG Wheeler's SBP. AR 113-22. On January 31, 2017, Stacy Wheeler submitted a "Verification for Survivor Annuity" to initiate annuity payments. AR 123-25. On August 7, 2017, DFAS denied her "request to be deemed as the former spouse beneficiary and to be paid an SBP annuity (in lieu of the surviving spouse Ashley Wheeler)." AR 128-32. Citing 10 U.S.C. § 1448(d)(3), DFAS stated the following:

> In this case, on the date MSG Wheeler died, he had a surviving spouse, had not made an election for SBP coverage for his former spouse, was not under a court ordered obligation to make such an election and his former spouse had not requested a deemed election (nor would any such request, if made, have been honored given there was no SBP awarded in the court orders). As a result, MSG Wheeler's current spouse is the SBP beneficiary.

AR 129. According to DFAS, Stacy Wheeler could not rely on the Moore County court's June 2, 2016, order to deem her a "former spouse beneficiary under 10 U.S.C. § 1450(f)(3)" because the annuity at issue was not an asset of MSG Wheeler's estate and MSG Wheeler had no obligation

to elect former spouse coverage. AR 130. Therefore, DFAS concluded that the benefit belonged to MSG Wheeler's surviving spouse as of the date of his death. *Id.*

On May 10, 2018, Stacy Wheeler applied to the ABCMR to have MSG Wheeler's record "corrected to reflect a timely election for former-spouse SBP coverage." AR 70. She included with her application a document titled "Consent to Waiver of Rights to Benefits Payable Under the [SBP]" signed by Ashley Wheeler and notarized by her counsel on November 9, 2017. AR 133 (capitalization omitted). The document stated:

> I, Ashley B. Wheeler, hereby waive and relinquish any rights I am entitled to receive pursuant to the [SBP] coverage by virtue of being the spouse of [MSG] Wheeler at his death on October 22, 2015. I consent and agree that I have no right, title or interest in the [SBP] and I hereby consent to said benefits being assigned to Stacy Wheeler.

*Id.* On December 23, 2020, the ABCMR denied Stacy Wheeler's application. AR 62, 68. The ABCMR noted that the law permits a former spouse to request a deemed election by submitting a request "within 1 year from the date of the court decree that awards the coverage." AR 67. It further explained that in this case, because the servicemember was killed in action and no SBP election and premium payments had been made, the SBP was automatically awarded to the servicemember's surviving spouse. *Id.* Stacy Wheeler filed the instant case on February 9, 2022, requesting that the Court order the correction of MSG Wheeler's military records to reflect her entitlement to an annuity under the SBP. [ECF 1] at 7-8.

On July 15, 2022, Stacy Wheeler filed an MJAR pursuant to RCFC 52.1(c). [ECF 10]. On August 12, 2022, the government moved to dismiss Stacy Wheeler's complaint pursuant to RCFC 12(b)(1), arguing that she failed to file her complaint within the applicable statute of limitations, and pursuant to RCFC 12(b)(6), arguing that she failed to satisfy the requirements for a deemed election. [ECF 11]. In the alternative, the government filed a cross-MJAR. *Id.* After oral argument, *see* [ECF 18], and supplemental briefing, [ECFs 22-24, 27], the Court denied the government's motion to dismiss and granted Stacy Wheeler's MJAR. *Wheeler v. United States*, 167 Fed. Cl. 345, 347 (2023). The Court found that "Stacy Wheeler's claim accrued on June 13, 2016, the day she submitted her written request for a deemed election to the DFAS," and that "[a]ccordingly, the complaint—which Stacy Wheeler filed on February 9, 2022—was timely because it was filed within the six-year statute of limitations." *Id.* at 351. The Court also found that "[t]he ABCMR's conclusion that Stacy Wheeler's request for a deemed election is not authorized because MSG Wheeler was killed in action and, at the time of his death, no SBP election had been made is inconsistent with the applicable statutes." *Id.* at 352. The Court explained that "despite the fact that Stacy Wheeler had not submitted a request for a deemed election at the time of MSG Wheeler's death, nothing in the statute precluded her from doing so once she received the Moore County court's clarifying order" and that "[i]n its denial of Stacy Wheeler's request, the ABCMR failed to provide any discussion or rationale in support of its conclusion that because MSG Wheeler's SBP benefits were initially awarded to Ashley Wheeler (his surviving spouse), they could not later be awarded to Stacy Wheeler (his former spouse) under the deemed election provisions in [10 U.S.C.] § 1448(d)(3)." *Id.* at 354. The Court then

4

remanded the matter to the ABCMR "to reconsider Stacy Wheeler's request for a deemed election consistent with this decision." *Id.*

On February 16, 2024, the ABCMR issued its decision on remand. AR 212, 215. In reaching its decision, the ABCMR noted that "there are competing interests to consider" and that "[b]oth [Stacy Wheeler] and [Ashley Wheeler] (the current beneficiary of the SBP) have compelling claims." AR 229. The ABCMR continued as follows:

> 3. First, the Board acknowledges the Court's finding that [Stacy Wheeler's] efforts, including a posthumous clarification of the property division order, constituted a successful deemed SBP election. The Board also notes [Ashley Wheeler] signed off on these efforts in 2016 and 2017, although the SBP payments [Ashley Wheeler] offered to relinquish were considerably less than they are now due to recent elimination of a Department of Veterans Affairs offset. However, the Board was primarily concerned that granting full relief to [Stacy Wheeler] at this point would deprive [Ashley Wheeler] of a Government benefit, upon which she has relied since 2015, without meaningful due process. Upon contact by the Board, [Ashley Wheeler] provided a statement describing her confusion about the court processes after her spouse's death and her current dependence on the SBP payments. She stated she was previously unaware of the existence of the federal court case making findings about whether the payments would continue. She had no opportunity to obtain counsel and make arguments during the proceedings that concluded in the applicant's favor. Despite the suit being filed in federal court in February 2022, [Ashley Wheeler] was not provided notice or an opportunity to respond until she was contacted by the Board in January 2024.
>
> 4. Ultimately the Board determined that correcting the record to show [Stacy Wheeler] as the beneficiary of [MSG Wheeler's] SBP would be fundamentally unfair to [Ashley Wheeler]. Because the requested record correction would adversely impact [Ashley Wheeler] and deprive her of a benefit without adequate due process, the Board declined to exercise its discretionary authority in this case. Even if an error occurred when [Ashley Wheeler] began receiving the SBP, the error does not warrant a grant of relief by the Board.

AR 229-30.[4]

---

[4] The ABCMR's reference to 2016 and 2017 documents in which Ashley Wheeler "signed off on these efforts" refer to: (i) the Moore County court's June 2, 2016, clarifying order and associated notarized acknowledgment signed by Ashley Wheeler and her attorney consenting to the order and acknowledging that Ashley Wheeler signed the order voluntarily on May 23, 2016, AR 111-12; and (ii) a "Consent to Waiver of Rights to Benefits Payable Under the [SBP]" document signed by Ashley Wheeler and notarized by her attorney on November 9, 2017, AR 133.

Thereafter, on April 17, 2024, the Court ordered that Ashley Wheeler be notified of this lawsuit pursuant to RCFC 14(b)(1). [ECF 41] at 1. In the order, the Court explained that "[i]f Ashley Wheeler determines that she has an interest in this action, she may file an appropriate pleading setting forth her interest in the subject matter of this litigation . . . ." *Id.* at 2. On the same day, the Court set a briefing schedule for a second round of cross-MJARs. [ECF 40]. On June 10, 2024, Ashley Wheeler filed an unopposed motion to intervene as a defendant-intervenor "for the purpose of preserving her statutory rights to [an SBP] annuity [] through her late husband, [MSG Wheeler]." [ECF 46] at 1. The Court granted Ashley Wheeler's motion to intervene on July 16, 2024, and confirmed that the then-existing briefing schedule remained valid. [ECF 52].

In accordance with the briefing schedule, the parties simultaneously filed their respective briefs on September 6, 2024, *see* [ECFs 53-55], and respective responses on October 18, 2024, *see* [ECFs 60-62]. Ashley Wheeler filed a reply opposing Stacy Wheeler's MJAR on October 25, 2024. [ECF 63]. Because the filing of a reply was not contemplated by the briefing schedule, Stacy Wheeler moved to strike the document, [ECF 64], and Ashley Wheeler responded thereto, [ECF 65]. The Court held oral argument on June 4, 2025. *See* [ECFs 68, 69].

## II.    LEGAL STANDARDS

When a party moves to dismiss a complaint under RCFC 12(b)(1), the non-movant bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 775 (Fed. Cir. 2021). When considering such a motion, "this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor." *Cal. Dep't of Water Res. v. United States*, 128 Fed. Cl. 603, 609 (2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, "a court accepts only uncontroverted factual allegations as true for purposes of the motion." *U.S. Enrichment Corp. v. United States*, 121 Fed. Cl. 532, 534 (2015) (quoting *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014)). "[D]isputed facts outside the pleadings are subject to the fact finding of the court." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011). "Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter." *Sandstone Assocs., Inc. v. United States*, 146 Fed. Cl. 109, 112 (2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). Thus, if the court determines that it lacks subject-matter jurisdiction, it must dismiss the case. RCFC 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

A party may move for judgment on the administrative record pursuant to RCFC 52.1, under which a court "make[s] factual . . . findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353-54 (Fed. Cir. 2005). The inquiry is whether the decision-making body, "given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review." *Williams v. United States*, 116 Fed. Cl. 149, 157 (2014). The court reviews decisions by military correction boards under Administrative Procedure Act standards. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). Therefore, the court must determine whether a board's decision "is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations."

*Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983)). "The correction board's decision must also be sufficiently detailed for the court to ascertain the reasoning behind the denial of relief to the applicant." *Keller v. United States*, 113 Fed. Cl. 779, 786-87 (2013) (citing *Buchanan v. United States*, 621 F.2d 373, 383 (Ct. Cl. 1980)), *aff'd*, 565 F. App'x 873 (Fed. Cir. 2014). Further, a military correction board's decision "may be reviewed for failure to correct plain legal error committed by the military . . . . includ[ing] the military's 'violation of statute, or regulation, or published mandatory procedure, or unauthorized act.'" *Dodson v. U.S. Gov't, Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (internal citations omitted) (quoting *Skinner v. United States*, 594 F.2d 824, 830 (1979)). "[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Id.* (citing *Arens v. United States*, 969 F.2d 1034, 1037 (Fed. Cir. 1992)).

## III.    DISCUSSION

Stacy Wheeler states that "[i]n its second review . . . concerning the application of the SBP statute, the [ABCMR] acknowledged the law, and even concluded that [Stacy Wheeler] had 'successful[ly] deemed [an] SBP election.'" [ECF 53] at 17 (fourth and fifth alteration in original) (quoting AR 230). She contends that the ABCMR "decided to take action contrary to the law, asserting that it had discretionary authority to ignore it because of due process concerns for Ashley Wheeler." *Id.* According to Stacy Wheeler, "given [that she] timely deemed an SBP election meeting all necessary requirements, the law mandates [that she] be awarded the SBP, and the Court should direct the [ABCMR] to do so . . . ." *Id.*

The government again challenges the Court's jurisdiction. This time, it argues that Stacy Wheeler's claim did not—as the Court previously found—accrue on June 13, 2016, the date of her deemed election request, but that it accrued on October 22, 2015, the date of MSG Wheeler's death. [ECF 55] at 12-13, 16-17. The government contends that the Court lacks jurisdiction because Stacy Wheeler's complaint was filed more than six years after her claim accrued. *Id.* Alternatively, the government contends that, even if the Court concludes that it has jurisdiction, the Court should decide the case on the merits in the government's favor because the ABCMR reasonably declined to alter MSG Wheeler's records without Ashley Wheeler's participation, *id.* at 17-19, and because "the SBP statutes require that Ashley Wheeler retain the annuity," *id.* at 19.

Ashley Wheeler argues that "the ABCMR correctly applied the federal SBP statute" and that, therefore, the Court should grant the government's cross-MJAR and deny Stacy Wheeler's MJAR. [ECF 54] at 9. She contends that Stacy Wheeler "cannot satisfy the threshold requirement for former spouse deemed election status," *id.* at 19 (emphasis omitted), that a Department of Defense Instruction ("DoDI") prohibits former spouse deemed elections based on a posthumous state court action, *id.* at 23, and that the Moore County court's June 2, 2016, clarifying order impermissibly supersedes federal law, *id.* at 25. Additionally, she posits that equitable principles warrant preservation of her entitlement to the SBP benefits. *Id.* at 28.

As explained below, the Court finds that (i) it has jurisdiction over Stacy Wheeler's complaint because it was filed within the statute of limitations, (ii) the ABCMR's refusal to correct the record to make Stacy Wheeler the beneficiary of MSG Wheeler's SBP benefits due to concerns regarding Ashley Wheeler's due process rights was rational, and (iii) Stacy Wheeler is entitled to an annuity under the plain language of 10 U.S.C. § 1448(d)(3).

### A.    The Court has Jurisdiction Over Stacy Wheeler's Claim

The government states that if a servicemember dies on active duty, 10 U.S.C. § 1448(d)(1) "vests the SBP annuity in the servicemember's surviving spouse." [ECF 55] at 15. However, the government adds, "if the servicemember was already obliged by a court order to provide a former spouse with an annuity, subsection (d)(3) mandates that the surviving spouse 'may not' receive the annuity [and that] [i]nstead, [the] servicemember's former spouse is the servicemember's rightful SBP beneficiary 'as if' the servicemember had made such an election." *Id.* (quoting 10 U.S.C. § 1448(d)(3)). According to the government:

> [I]n the case of an active duty servicemember's death, a former spouse's entitlement to an SBP annuity is not conditioned on whether the former spouse submitted a deemed election pursuant to 10 U.S.C. § 1450(f)(3). Instead, the statute only requires that there exist a court order or spousal agreement requiring the servicemember to elect former spouse SBP coverage upon becoming eligible to participate in the SBP.
>
> . . . .
>
> Thus, because section 1448(d)(3)(B) [of Title 10] does not require submission of a written request for a deemed election to establish a former spouse's entitlement to an SBP annuity when a servicemember dies on active duty, Stacy Wheeler's June 13, 2016[,] written request was not an event "necessary to enable [her] to bring suit" if she had an otherwise valid claim.

[ECF 55] at 15-16 (fourth alteration made by the government) (quoting *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed Cir. 2003) (en banc)). Therefore, the government requests that the Court dismiss Stacy Wheeler's claim for lack of subject-matter jurisdiction on the basis that she did not file her complaint within six years from October 22, 2015, the date of MSG Wheeler's death. [ECF 55] at 17.

Stacy Wheeler argues that she "brought her Tucker Act claim within the six-year statute of limitations." [ECF 61] at 11. She contends:

> [A] former spouse [] is entitled to a servicemember's [] annuity payments when: 1) [a servicemember] dies while on active duty in the line of duty; 2) a court order requires that [servicemember] to provide an annuity to a [ former spouse]; and as applicable here, 3)

> that [former spouse] took the necessary action to deem the [SBP]
> election "in the same manner as provided in section 1450(f)(3) of
> this title."

*Id*. (emphasis omitted) (quoting 10 U.S.C. § 1448(d)(3)). Stacy Wheeler asserts that she "cannot be said to have had any ability to institute an action against the Government for the SBP upon MSG Wheeler's death, because remaining necessary events had yet to occur to 'entitle the claimant to institute an action.'" *Id*. at 12 (quoting *Kinsey v. United States*, 852 F.2d 556, 557 (Fed. Cir. 1988)). Stacy Wheeler's position is that the six-year statute of limitations started to run once all events necessary under section 1448(d)(3) occurred, namely issuance of the June 2, 2016, clarifying order and her subsequent deemed election request to DFAS. *Id*. at 12-13.

Consistent with its prior decision in this case, *Wheeler*, 167 Fed. Cl. at 351, the Court finds that Stacy Wheeler's claim accrued on June 13, 2016—the day she submitted her written request for a deemed election to DFAS. "The Tucker Act authorizes certain actions for monetary relief against the United States to be brought in the Court of Federal Claims." *Martinez*, 333 F.3d at 1302. However, any claim over which this Court has jurisdiction under the Tucker Act "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A claim accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit . . . ." *Martinez*, 333 F.3d at 1303. Regarded as a "condition[] on the [government's] waiver of sovereign immunity," *id*. at 1316, this six-year statute of limitations "creates a jurisdictional prerequisite" for a suit in the Court of Federal Claims. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1355 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130 (2008). In other words, a claim that is not brought within six years after it accrues must be dismissed for lack of subject matter jurisdiction. *See John R. Sand & Gravel Co.*, 457 F.3d at 1356 (holding that the Court of Federal Claims lacked jurisdiction to hear a claim filed outside of the statute of limitations); *see also Goodrich v. United States*, 434 F.3d 1329, 1336 (Fed. Cir. 2006) (affirming the Court of Federal Claim's dismissal of a claim for lack of jurisdiction under the statute of limitations).

Section 1448(d) of Title 10 of the United States Code addresses the circumstances under which "the Secretary [of the relevant military branch] shall pay an annuity" to the survivors of a servicemember who dies on active duty. 10 U.S.C. § 1448(d). As a general matter, the statute provides that the Secretary "shall pay an annuity . . . to the surviving spouse." 10 U.S.C. § 1448(d)(1). However, it also sets forth circumstances where the Secretary is prohibited from paying an annuity to the surviving spouse and must pay an annuity to the former spouse:

> **(3) Mandatory former spouse annuity.**–If a member described in
> paragraph (1) is required under a court order or spousal agreement
> to provide an annuity to a former spouse upon becoming eligible to
> be a participant in the [SBP] or has made an election under
> subsection (b) to provide an annuity to a former spouse, the
> Secretary–
>
> **(A)** may not pay an annuity under paragraph (1) or (2); but

**(B)** shall pay an annuity to that former spouse as if the member had been a participant in the [SBP] and had made an election under subsection (b) to provide an annuity to the former spouse, or in accordance with that election, as the case may be, if the Secretary receives a written request from the former spouse concerned that the election be deemed to have been made in the same manner as provided in section 1450(f)(3) of this title.

10 U.S.C. § 1448(d)(3). This section applies to a servicemember who dies on active duty and who either "is required under a court order or spousal agreement to provide an annuity to a former spouse upon becoming eligible to be a participant in the [SBP] or has made an election . . . to provide an annuity to a former spouse." *Id.* In either event, the Secretary may not pay an annuity to the surviving spouse. 10 U.S.C. § 1448(d)(3)(A). Instead, the Secretary is required to pay an annuity to the former spouse "as if the member had been a participant in the [SBP] and had made an election . . . to provide an annuity to the former spouse, or in accordance with that election." 10 U.S.C. § 1448(d)(3)(B). Under both circumstances, to initiate payment of an annuity by the Secretary, the "former spouse is required to submit a timely written request for a deemed election pursuant to § 1450(f)(3) to be entitled to an SBP annuity under § 1448(d)(3)." *Bannister v. United States*, 139 F.4th 1300, 1304 (Fed. Cir. 2025) (holding that "the final 'if' clause modifies both election scenarios that precede it and requires a former spouse to submit a timely written request in either scenario").

Here, when MSG Wheeler died while on active duty, he had not made an election to provide an annuity to Stacy Wheeler. Therefore, the only circumstance under which Stacy Wheeler can establish her entitlement to an annuity under section 1448(d)(3) is if MSG Wheeler is required under a court order or spousal agreement to provide her an annuity *and* she submits a deemed election request as provided in section 1450(f)(3). 10 U.S.C. § 1448(d)(3)(B). It is not enough that a court order merely exists. *See Bannister*, 139 F.4th at 1304. Consequently, Stacy Wheeler's claim for an annuity accrued when she submitted a deemed election request to DFAS. *See Martinez*, 333 F.3d at 1303. Stacy Wheeler submitted her deemed election request on June 13, 2016, AR 113-22, and filed her complaint on February 9, 2022, [ECF 1]; five years, seven months, and twenty-seven days after the deemed election request. Because her complaint was filed within six years after her claim accrued, *see* 28 U.S.C. § 2501, it is timely, and this Court may exercise subject-matter jurisdiction over it, *see John R. Sand & Gravel Co.*, 457 F.3d at 1355.

## B.    The ABCMR Rationally Raised Due Process Concerns

In the Court's prior decision, the Court found that "[t]he ABCMR's conclusion that Stacy Wheeler's request for a deemed election is not authorized because MSG Wheeler was killed in action and, at the time of his death, no SBP election had been made is inconsistent with the applicable statutes." *Wheeler*, 167 Fed. Cl. at 352. The Court concluded that "Stacy Wheeler complied with the statutory requirements for a deemed election under section 1450(f)(3)" and that "[t]here is therefore no basis for the ABCMR's conclusion that Stacy Wheeler's request is not authorized." *Id.* at 354 (internal quotation marks omitted). Accordingly, the Court remanded

to the ABCMR "to reconsider Stacy Wheeler's request for a deemed election consistent with [the Court's] decision." *Id.* On remand, while the ABCMR "acknowledge[d] the Court's finding that [Stacy Wheeler's] efforts, including a posthumous clarification of the property division order, constituted a successful deemed SBP election," AR 229, it did not "correct[] the record to show [Stacy Wheeler] as the beneficiary of [MSG Wheeler's] SBP," AR 230. Instead, the ABCMR stated that "the requested record correction would adversely impact [Ashley Wheeler] and deprive her of a benefit without adequate due process . . . ." AR 230. Therefore, "the [ABCMR] declined to exercise its discretionary authority . . . [and stated that] [e]ven if an error occurred when [Ashley Wheeler] began receiving the SBP, the error does not warrant a grant of relief by the [ABCMR]." *Id.*

Stacy Wheeler argues that "the ABCMR's actions [on remand] were arbitrary, capricious, unsupported by substantial evidence, and/or contrary to law." [ECF 61] at 24. She contends that, "[i]n light of the legal determinations made by this Court in its earlier opinion and order [], the [ABCMR] has violated this Court's standard of review and based upon [her] valid deemed election submitted on June 13, 2016, MSG Wheeler's records must be corrected to show the SBP shifted to [Stacy Wheeler], effective July 1, 2016." *Id.* In Stacy Wheeler's view, "when looking at the [ABCMR's] latest decision on remand, the [ABCMR] itself makes no contention that the posthumous deemed election was invalid," *id.* at 24, and "[i]nstead, the [ABCMR] chose not to apply the law because of the existence of [Ashley Wheeler's] recent competing claim, deciding not to ['']exercise' what it viewed as 'its discretionary authority in this case,'" *id.* at 25 (emphasis omitted).

In response, the government argues that the ABCMR reasonably concluded "that altering MSG Wheeler's military records would be 'fundamentally unfair' and would deprive Ashley Wheeler of a benefit 'without adequate due process.'" [ECF 55] at 18 (quoting AR 230). According to the government, "[b]ecause Congress has mandated the payment of an SBP annuity for survivors of certain servicemembers who die on active duty, for these survivors, the SBP annuity constitutes a property interest protected by the Due Process Clause . . . [and] [t]he Due Process Clause mandates that a person subject to deprivation of a property interest must have 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* at 18 (second internal quotation marks omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Therefore, the government continues, because "[t]he [ABCMR] observed that Ashley Wheeler had not participated in the [ABCMR] proceeding and had been unaware of the suit in this Court," [ECF 55] at 18, "the ABCMR [rationally] determined that altering MSG Wheeler's military records so as to make Stacy Wheeler his SBP beneficiary would deprive Ashley Wheeler of her property interest in the SBP annuity without due process," *id.* at 19.

The Court finds that, while the ABCMR lacks discretion under 10 U.S.C. § 1448(d)(3) to determine a former spouse's entitlement to an SBP annuity, its decision on remand was nevertheless rational because it was based on valid due process concerns. In reviewing a decision by the ABCMR, the court must determine whether the decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Melendez Camilo*, 642 F.3d at 1044. The court may review the decision "for failure to correct plain legal error . . . [which] includes the military's 'violation of statute, or regulation, or published mandatory procedure, or unauthorized act.'" *Dodson*, 988 F.2d at 1204 (quoting

*Skinner*, 594 F.2d at 830)). In doing so, however, the court presumes that the ABCMR "act[s] lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Id.* (citing *Arens*, 969 F.2d at 1037).

While the ABCMR states that it "declined to exercise its discretionary authority" in deciding the beneficiary of the SBP annuity, AR 230, the language of section 1448(d)(3) does not provide the ABCMR with discretion when it comes to determining whether to pay an annuity to a former spouse who submits a proper deemed election. Because, as the Court previously found, Stacy Wheeler submitted a proper deemed election request as provided in section 1450(f)(3), section 1448(d)(3) prohibits the Secretary from paying an annuity to Ashley Wheeler and instead requires the Secretary to pay an annuity to Stacy Wheeler. *See* 10 U.S.C. § 1448(d)(3)(A)-(B). Therefore, upon reconsideration of Stacy Wheeler's request for a deemed election, the ABCMR was required by statute to correct MSG Wheeler's records to reflect that Stacy Wheeler, not Ashley Wheeler, is his SBP beneficiary. Furthermore, contrary to the ABCMR decision, the Court did not conclude in its prior opinion that an error occurred when the Secretary initially paid the annuity to Ashley Wheeler. *See generally Wheeler*, 167 Fed. Cl. at 350-54. Indeed, the Court recognized that, upon MSG Wheeler's death, "Ashley Wheeler was eligible to receive a[n] SBP annuity as his surviving spouse, and [that] the Secretary paid her such annuity," pursuant to section 1448(d)(1). *Id.* at 353. However, the Court also explained that "nothing in the relevant statutes precludes the Secretary from paying the annuity to [Stacy Wheeler], even though the Secretary initially paid the annuity to Ashley Wheeler." *Id.*

Nevertheless, the Court finds that the ABCMR raised valid due process concerns and that, therefore, its decision was rational. "Procedural due process imposes constraints on governmental decisions which deprive individuals of . . . 'property' interests within the meaning of the Due Process Clause." *Mathews*, 424 U.S. at 332 (internal quotation marks in original). Because survivor benefits under the SBP "are nondiscretionary and statutorily mandated, they confer a property interest protected by the Due Process Clause." *Kelly v. United States*, 69 F.4th 887, 900 (Fed. Cir. 2023) (restating previous holding that "due process attaches to benefits that are nondiscretionary and statutorily mandated"). "Th[e] [Supreme] Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." *Mathews*, 424 U.S. at 333 (citing *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974)).[5]

In its decision, the ABCMR acknowledged the Court's finding that Stacy Wheeler submitted a proper deemed election under section 1448(d)(3) but stated that it "was primarily concerned that granting full relief to [Stacy Wheeler] at this point would deprive [Ashley Wheeler] of a Government benefit, upon which she had relied since 2015, without meaningful due process." AR 230. According to the ABCMR, when it contacted Ashley Wheeler, she "provided a statement describing her confusion about the court processes after [MSG Wheeler's] death and her current dependence on the SBP payments." *Id.* The ABCMR further stated that Ashley Wheeler said that "she was previously unaware of the existence of the federal court case

---

[5] While this Court may exercise jurisdiction to consider a due process claim in the context of a dispute over SBP benefits, *see Holmes v. United States*, 98 Fed. Cl. 767, 774 (2011), the due process concerns in this case were raised by the ABCMR, not the litigants. Because there is no due process claim before the Court, the Court does not need to address this jurisdictional issue.

making findings about whether the payments would continue [and that] [s]he had no opportunity to obtain counsel and make arguments during the proceedings that concluded in [Stacy Wheeler's] favor." *Id.* The ABCMR concluded that "[d]espite the suit being filed in federal court in February 2022, [Ashley Wheeler] was not provided notice or an opportunity to respond until she was contacted by the [ABCMR] in January 2024." *Id.* The Court does not interpret the ABCMR's decision as a refusal to implement the requirements of section 1448(d)(3). Instead, the Court views the ABCMR's decision as a good faith effort to ensure that Ashley Wheeler is afforded adequate due process before complying with the statute. *See Dodson*, 988 F.2d at 1204. Therefore, the Court finds that the ABCMR's decision has a rational basis.[6]

### C.    Stacy Wheeler Is Entitled to An Annuity Under 10 U.S.C. § 1448(d)(3)

The government states that, "[t]he due process problem the [ABCMR] faced has evaporated in this Court [because] Ashley Wheeler is now a party and may present her arguments." [ECF 55] at 19. Therefore, the government maintains that "this Court may adjudicate whether Stacy Wheeler or Ashley Wheeler is the proper beneficiary of MSG Wheeler's SBP annuity." *Id.* The government contends that "[t]he Court's previous order did not direct the award of SBP benefits to Stacy Wheeler, but rather rejected the [ABCMR's] pre-remand rationale and made several determinations relevant to the question of which beneficiary is entitled to the benefits." *Id.* According to the government, "[w]hen analy[zed] in full, the SBP statutes require that Ashley Wheeler retain the annuity . . . [b]ecause neither order issued by the Moore County court placed MSG Wheeler under a present obligation 'to provide an annuity to [Stacy Wheeler] upon becoming eligible to be a participant in the [SBP].'" *Id.* (quoting 10 U.S.C. § 1448(d)(3)).

Ashley Wheeler advances several arguments in opposition to Stacy Wheeler's position. First, she argues that Stacy Wheeler "cannot satisfy the threshold requirement for former spouse deemed election status under the federal [SBP] statute," [ECF 54] at 19 (emphasis omitted), because "[o]n the day MSG Wheeler died, no court order or incorporated settlement agreement mandated that he elect [Stacy Wheeler] as his SBP beneficiary," as required under section 1450(f)(3)(A)(ii)(I), *id.* at 22-23. Second, she contends that "[t]he Department of Defense [] bars a former spouse from seeking [a] deemed election after the death of an eligible service member unless the original court order 'specified' the service member's duty to elect a former spouse during the service member's lifetime." *Id.* at 23. Third, she asserts that "[t]he June 2, 2016, Clarifying Order is not 'regular on its face' as required by federal law because it purported to

---

[6] Stacy Wheeler argues that "no matter the arguments that may be received from [the government] or Ashley Wheeler, '[t]he law of the case doctrine prevents a court from reopen[ing] issues decided in earlier stages of the *same litigation*.'" [ECF 53] at 18 (emphasis added by Stacy Wheeler) (second internal quotation marks omitted) (quoting *Taylor v. United States*, 73 Fed. Cl. 532, 538 (2006) (second alteration in original)). She contends that because "the [ABCMR] acknowledged that [she] successfully deemed an SBP election . . . . the legal issues before the Court are settled, and the [ABCMR's] decision is contrary to the law." *Id.* However, "[t]he [law of the case] doctrine . . . 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" *Etchegoinberry v. United States*, 132 F.4th 1374, 1378 (Fed. Cir. 2025) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)). "Courts can therefore revisit prior decisions, but they should exercise discretion in reopening matters already decided, absent extraordinary circumstances." *Id.* (citing *Christianson*, 486 U.S. at 817). In this instance, the Court finds that the due process concerns raised by the ABCMR present an extraordinary circumstance, and, therefore, the Court, in its discretion, reopens the issue of whether Stacy Wheeler is entitled to an SBP annuity.

supersede federal law," on the grounds that "[t]he [Moore] County Court lacked 'competent jurisdiction' to require Ash[le]y Wheeler, as MSG Wheeler's estate's administrator, to elect [Stacy Wheeler] as his SBP beneficiary." *Id.* at 25 (emphasis omitted).

The Court is not compelled by either the government's or Ashley Wheeler's arguments. Consequently, the Court's prior determination that Stacy Wheeler made a proper deemed election request under section 1450(f)(3) stands, and Stacy Wheeler is entitled to an annuity under section 1448(d)(3). In its prior decision, the Court determined that "[t]he ABCMR's conclusion that Stacy Wheeler's request for a deemed election is not authorized because MSG Wheeler was killed in action and, at the time of his death, no SBP election had been made is inconsistent with the applicable statutes." *Wheeler*, 167 Fed. Cl. at 352. In doing so, the Court applied the plain language of sections 1448(d)(1), 1448(d)(3), and 1450(f)(3) to the facts of this case. *Id.* at 353. The Court explained that "the Moore County court clarifying order required that MSG Wheeler elect to provide an annuity under the SBP to Stacy Wheeler [and that] [u]pon receipt of this order, Stacy Wheeler submitted a written request for a deemed election with a copy of the Moore County court clarifying order as provided in section 1450(f)(3)." *Id.* The Court therefore concluded that "Stacy Wheeler complied with the statutory requirements for a deemed election under section 1450(f)(3)." *Id.* Additionally, the Court explained that "[n]either section 1448 nor section 1450 requires that the written request for a deemed election be received prior to the death of the service member," *id.*, and that "despite the fact that Stacy Wheeler had not submitted a request for a deemed election at the time of MSG Wheeler's death, nothing in the statute precluded her from doing so once she received the Moore County court's clarifying order," *id.* at 354. This conclusion remains intact.

Considering the Court's prior decision, the government and Ashley Wheeler now assert that, to effectuate a proper deemed election, the statute requires that the court order requiring the servicemember to elect SBP coverage for a former spouse exist prior to the servicemember's death. *See* [ECF 55] at 22 ("[T]he problem stems from the fact that MSG Wheeler was never in his lifetime under the obligation to elect SBP coverage for Stacy Wheeler."); [ECF 54] at 19 ("[B]ecause [Stacy Wheeler] cannot produce a court order or an incorporated settlement agreement requiring MSG Wheeler to elect her during his lifetime, she cannot satisfy the deemed election provisions of 10 U.S.C. § 1450(f)(3)."). However, such a requirement is not supported by the plain language of the statute. The Court begins statutory interpretation with the statute's plain language. *Mansell v. Mansell*, 490 U.S. 581, 588 (1989) ("Where . . . the question is one of statutory construction, we begin with the language of the statute."); *O'Farrell v. Dep't of Def.*, 882 F.3d 1080, 1084 (Fed. Cir. 2018) ("We begin our statutory interpretation with the plain language"). Here, section 1448(d)(3) applies only to servicemembers who die while on active duty. *See* 10 U.S.C. § 1448(d)(3) (referring to "a member described in paragraph (1)," which describes servicemembers "who die[] while on active duty" in paragraph (1)(A) and describes servicemembers "who die[] in line of duty while on active duty" in paragraph (1)(B)). The statute mandates that the Secretary pay an annuity to a former spouse if the deceased servicemember "*is required* under a court order or spousal agreement to provide an annuity to a former spouse upon becoming eligible to be a participant in the [SBP] or *has made* an election . . . . to provide an annuity to a former spouse," 10 U.S.C. § 1448(d)(3) (emphasis added), and the Secretary receives a deemed election request from the former spouse "in the same manner as provided in section 1450(f)(3)," 10 U.S.C. § 1448(d)(3)(B). As explained below, the use of both

the present and present-perfect tenses in section 1448(d)(3) demonstrates that Congress contemplated that a deceased servicemember could be subject to a court order that either existed at the time of the servicemember's death or that was issued following the servicemember's death.

Courts "ascribe[] significance to verb tense" when interpreting statutes. *Carr v. United States*, 560 U.S. 438, 448 (2010) (citing Dictionary Act, 1 U.S.C. § 1); *United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). The Supreme Court has indicated that verbs in the present-perfect tense—which use the words "have" or "has"—"denot[e] an act that has been completed" at some point in the past. *Barrett v. United States*, 423 U.S. 212, 216 (1976); *accord Hewitt v. United States*, 606 U.S. 419, 427-29 (2025) (stating that "[t]he present-perfect tense can refer to either (1) an act, state, or condition that is *now* completed or a past action that comes up to and touches the *present*" and thus "conveys to a listener that the event in question continues to be true or valid" (internal quotation marks and citations omitted)). In contrast, "'unless the context indicates otherwise [,] . . . words used in the present tense include the future as well as the present' but not the past tense." *Frederick v. Shinseki*, 684 F.3d 1263, 1270 (Fed. Cir. 2012) (alterations in original) (quoting 1 U.S.C. § 1).

In section 1448(d)(3), Congress used the present tense to describe the first of the two circumstances where a former spouse becomes the mandatory recipient of an annuity following a servicemember's death on active duty: "If a member . . . *is required* under a court order or spousal agreement to provide an annuity to a former spouse . . . ." 10 U.S.C. § 1448(d)(3) (emphasis added). Congress's use of the phrase "is required" contemplates that the deceased servicemember may—either at the time of death or posthumously—be required by a court order or spousal agreement to provide an annuity to a former spouse.[7] Next, Congress used the present-perfect tense to describe the second of the two circumstances where a former spouse becomes the mandatory recipient of an annuity following a servicemember's death on active duty: "If a member . . . *has made* an election . . . to provide an annuity to a former spouse . . . ." 10 U.S.C. § 1448(d)(3) (emphasis added). Here, Congress's use of the present-perfect tense, instead of the present tense, makes sense because a servicemember who dies on active duty can no longer make an election to provide an annuity to a former spouse. If Congress intended to limit the validity of court orders or spousal agreements that obligate a servicemember to provide an annuity to a former spouse to only those orders or agreements that existed at the time of the servicemember's death, it would have done so. In other words, Congress would have either modified its use of the present tense and stated, for example, that the servicemember "is required, at the time of death . . . ." or it would have used the past tense and stated, for example, that the servicemember "was required, at the time of death . . . ." The Court therefore interprets section

---

[7] The Court acknowledges that a deceased servicemember cannot enter into a spousal agreement. However, section 1448(d)(3) incorporates the deemed election requirements under section 1450(f)(3). *See* 10 U.S.C. § 1448(d)(3)(B) (requiring that the deemed election request be made "in the same manner as provided in section 1450(f)(3)"). Under section 1450(f)(3), a deemed election may be based on a court order that "incorporates, ratifies, or approves the written agreement of [the servicemember]" or "a statement from the clerk of court (or other appropriate official) that such agreement has been filed with the court in accordance with applicable State law." 10 U.S.C. § 1450(f)(3)(A)(ii). Thus, while a deceased servicemember cannot enter into a written spousal agreement, a spousal agreement may be incorporated, ratified, or approved by, or filed with, the appropriate state court after the death of the servicemember.

1448(d)(3) to provide that, when a servicemember dies while on active duty, the Secretary is required to provide an annuity to the former spouse if such servicemember is required, under a court order or spousal agreement in existence at the time of death or issued thereafter, to provide an annuity to a former spouse and the former spouse submits a deemed election request as provided in section 1450(f)(3). In such event, the statute instructs that the Secretary "shall pay an annuity to that former spouse *as if* the member *had been* a participant in the Plan and *had made* an election . . . to provide an annuity to the former spouse." 10 U.S.C. § 1448(d)(3)(B) (emphasis added). Congress thereby recognized the fact that a servicemember who dies while on active duty will not have the opportunity to retire—and participate in the plan—and will not have the opportunity to make an election as required by a court order or spousal agreement.[8]

In this case, the Moore Couty court—in its June 2, 2016, clarifying order—posthumously required MSG Wheeler to provide Stacy Wheeler an annuity. As explained below, despite being issued after MSG Wheeler's death, the clarifying order qualifies as a court order under the SBP statute. The term "court order" is defined under the statute as:

> [A] court's final decree of divorce, dissolution, or annulment or a court ordered, ratified, or approved property settlement incident to such a decree (*including a final decree modifying the terms of a previously issued decree of divorce, dissolution, annulment, or legal separation, or of a court ordered, ratified, or approved property settlement agreement incident to such previously issued decree*).

---

[8] Ashley Wheeler argues that "[Stacy Wheeler] cannot retroactively impose duties on MSG Wheeler after he died." [ECF 54] at 23. Citing to DoDI 1332.42, she asserts that the Department of Defense "bars a former spouse from seeking [a] deemed election after the death of an eligible member unless the original court order 'specified' the service member's duty to elect a former spouse during the service member's lifetime." *Id.* The Court is not persuaded by this argument. DoDI 1332.42 "establishes policy, assigns responsibilities, and provides procedures for administration of the . . . [SBP] Program." [ECF 61-1] at 105. Section 5.5 provides that "[a] former spouse may only seek a deemed former spouse election after the death of a retired participant if . . . . the original court order or written agreement filed with a court in accordance with applicable State law, subsequent to a proceeding of divorce, dissolution, or annulment before the member's death, specified former spouse coverage." *Id.* at 106. Section 5.6 provides that "[f]or purposes of determining an SBP beneficiary, a member's marital status is fixed on the date of the member's death [and that] [a] posthumous court order that vacates or sets-aside a previously issued divorce order between the member or retiree and his or her former spouse will not result in the spouse becoming eligible for an SBP . . . annuity." *Id.* As an initial matter, the version of DoDI 1332.42 cited by Ashley Wheeler is not applicable because it became effective on December 30, 2020, [ECF 61-1] at 105, several years after issuance of the June 2, 2016, clarifying order and Stacy Wheeler's deemed election request. Furthermore, nothing in the statute supports the requirement in DoDI 1332.42 that a court order specifying former spouse coverage must be issued before the servicemember's death. Regardless, applying section 5.5 to the facts of this case, the May 2, 2013, order *was* issued before MSG Wheeler's death, and it permitted Stacy Wheeler to elect former spouse coverage. AR 5 ("[Stacy Wheeler] may elect to receive SBP coverage"). Thus, while the original order did not require MSG Wheeler to elect former spouse coverage for Stacy Wheeler, it did specify former spouse coverage in favor of Stacy Wheeler. With respect to section 5.6, the June 2, 2016, clarifying order did not "vacate or set[]-aside" the divorce decree issued by the Moore County court. The June 2, 2016, clarifying order modified the May 2, 2013, order to reflect the intent of MSG Wheeler and Stacy Wheeler and to allow Stacy Wheeler to obtain a deemed election as his former spouse. AR 110 ("It was the intent of the parties for [Stacy Wheeler] to be the former-spouse [SBP] beneficiary of [MSG Wheeler's] military retirement benefits . . . . [and] [t]his order shall authorize [Stacy Wheeler] to submit a 'deemed election'"). At the time of MSG Wheeler's death, Stacy Wheeler was his former spouse, and the June 2, 2016, clarifying order did not attempt to change her marital status to make her eligible for an SBP annuity.

10 U.S.C. § 1447(13)(A) (emphasis added). Thus, the statute allows a subsequent final decree to modify the terms of a court ordered property settlement agreement incident to a previously issued divorce decree.

Here, the Moore County court issued the divorce decree on October 25, 2011. AR 1-2. It stated "[t]hat the parties have claims and counterclaims . . . and request that these claims be severed and preserved for hearing [at] a later date." *Id.* at 2. Nearly two years later, on May 2, 2013, the Moore County court issued a "Final Con[s]ent Order" addressing "the parties' claims and counterclaims for . . . equitable distribution and . . . for post separation support." *Id.* at 3. The order stated that "the parties appeared in open Court . . . [and] entered into negotiations by and through counsel resulting in an agreement which resolved all issues in controversy . . . ." *Id.* Additionally, the order stated that an "[MPDO] shall be entered which allocates fifty percent (50%) of the marital portion of [MSG Wheeler's] military retired pay to [Stacy Wheeler] . . . ." *Id.* at 5. The order also allowed Stacy Wheeler to "elect to receive SBP coverage for her portion of the military retirement but she shall be required to pay for such coverage." *Id.* Further, the order mandated that Stacy Wheeler's counsel prepare the MPDO, *id.*, and provided that the Moore County court "retains jurisdiction over th[e] matter to enter an MPDO consistent with the terms and conditions specified []," *id.* at 11. The Moore County court also generally "continue[d] to have jurisdiction of the parties and of the subject matter of this action." *Id.* at 9.

MSG Wheeler died while on active duty on October 22, 2015. AR 13. Thereafter, on June 2, 2016, the Moore County court entered an order clarifying its May 2, 2013, order, upon Stacy Wheeler's motion to clarify "the ineffective and faulty language" contained in that order. AR 45. In its clarifying order, the Moore County court noted that it still had jurisdiction over the matter and that "[i]t was the intent of the parties for [Stacy Wheeler] to be the former-spouse [SBP] beneficiary of [MSG Wheeler's] military retirement benefits." AR 46. The Moore County court further explained that, while "[n]o duty to elect former spouse SBP coverage was stated in the May 2, 2013, Order . . . [Stacy Wheeler's] claim for equitable distribution (which includes military pension division and the [SBP] benefits) preceded the death of [MSG Wheeler]." *Id.* Therefore, the Moore County court stated: "Pursuant to the equitable powers of this Court, this Court, in its discretion, enters an order clarifying the intent of the parties in setting forth the necessary language to provide [Stacy Wheeler] with former spouse SPB coverage." *Id.* Accordingly, because the June 2, 2016, clarifying order modified the terms of the court-ordered property settlement between MSG Wheeler and Stacy Wheeler as set forth in the May 2, 2013, final consent order, it constitutes a valid court order under section 1447.[9]

---

[9] According to Ashley Wheeler, "[t]he June 2, 2016, Clarifying Order is not 'regular on its face' . . . because it purported to supersede federal law." [ECF 54] at 25 (emphasis omitted). She argues that "[t]he County Court lacked 'competent jurisdiction' to require [her], as MSG Wheeler's estate's administrator, to elect [Stacy Wheeler] as his SBP beneficiary." *Id.* The Court is not persuaded by this argument. Section 1450(f)(3) requires that the court order used for a deemed election request be "regular on its face." 10 U.S.C. § 1450(f)(3)(A)(ii)(I). Under the SBP statute, "a court order is regular on its face if the order . . . is issued by a court of competent jurisdiction . . . and . . . includes nothing on its face that provides reasonable notice that it is issued without authority of law." 10 U.S.C. § 1408(b)(2); *see* 10 U.S.C. § 1447(13)(C) ("The term 'regular on its face', when used in connection with a court order, means a court order that meets the conditions prescribed in section 1408(b)(2) of this title."). Here, contrary to Ashley Wheeler's argument, the June 2, 2016, clarifying order did not require Ashley Wheeler, as the administrator of MSG Wheeler's estate, to make an election on his behalf. *See generally* AR 110-11. Instead, it "revised" the May 2, 2013, order to clarify the intent of the parties at the time that the May 2, 2013, order was issued and to include the requisite language to allow Stacy Wheeler to request a deemed election as provided in section 1450(f)(3). AR 111 (stating

Following the Moore County court's issuance of its June 2, 2016, clarifying order, Stacy Wheeler submitted a proper deemed election request under section 1448(d)(3)(B). *Wheeler*, 167 Fed. Cl. at 353 (finding that "Stacy Wheeler complied with the statutory requirements for a deemed election under section 1450(f)(3)"). The government and Ashley Wheeler argue, however, that for Stacy Wheeler to make a proper deemed election request, MSG Wheeler had to first fail or refuse to comply with a court order or settlement agreement that required him to elect former spouse coverage. [ECF 55] at 17 ("Because the 2016 order of the Moore County court was entered after MSG Wheeler's death, he never failed or refused to elect former spouse coverage."); [ECF 54] at 19 ("For a former spouse to qualify for deemed election status, she must demonstrate that an eligible service member 'fail[ed] or refus[ed]' to designate her as the beneficiary of his survivor benefits when compelled to do so by court order." (alteration added by Ashley Wheeler) (quoting 10 U.S.C. § 1450(f)(3)(A))). However, the Court finds that the requirement that the servicemember fail or refuse to make an election under section 1450(f)(3)(A) is inapplicable to deemed election requests under section 1448(d)(3)(B).

Section 1448(d)(3)(B) requires that the Secretary pay an annuity to a former spouse "if the Secretary receives a written request from the former spouse concerned that [an] election be deemed to have been made *in the same manner as* provided in section 1450(f)(3)." 10 U.S.C. § 1448(d)(3)(B) (emphasis added). Thus, a proper deemed election request under section 1448(d)(3) only requires that it be made in accordance with the procedures and requirements set forth in section 1450(f)(3). Indeed, section 1448(d)(3) applies to "a member described in paragraph (1)" of section 1448(d). 10 U.S.C. § 1448(d)(3). A servicemember under paragraph (1) of section 1448(d) is "a member who dies while on active duty." 10 U.S.C. § 1448(d)(1)(A). Section 1450(f)(3)(A), on the other hand, applies to "a person described in paragraph (2) or (3) of section 1448(b) . . . ." 10 U.S.C. § 1450(f)(3)(A). Paragraphs (2) and (3) of section 1448(b) apply only to living servicemembers. *See* 10 U.S.C. § 1448(b)(2) (allowing a servicemember to elect SBP coverage for a former spouse); 10 U.S.C. § 1448(b)(3) (allowing a servicemember already participating in the SBP to elect coverage for a former spouse). Thus, while section 1448(d)(3)(B) adopts the procedures and requirements for making a deemed election in section 1450(f)(3), it does not require that the servicemember fail or refuse to make an election under section 1450(f)(3)(A).[10] Section 1448(d)(3) requires only that the deemed election be made "in

---

that "the final consent order is revised to include the following language . . . [and] [t]his order shall authorize [Stacy Wheeler] to submit a 'deemed election'"). The June 2, 2016, clarifying order, therefore, did not involve the Moore County court acting outside its jurisdiction. Furthermore, in support of her position that the clarifying order purported to supersede federal law, Ashley Wheeler primarily cites state court cases where state law is deemed to have been preempted by federal law because the statutory procedures for a deemed election under the SBP were not followed. *See* [ECF 54] at 27 (citing *Watson v. Watson*, 822 S.E.2d 733, 736 (N.C. Ct. App. 2018) (holding that federal law preempts state law when a former spouse does not submit a timely deemed election under the SBP statute); *Turnmire v. Turnmire*, 200 N.E.3d 604, 617 (Ohio Ct. App. 2022) (same); *King v. King*, 483 S.E.2d 379, 383 (Ga. Ct. App. 1997) (same); *Dugan v. Childers*, 539 S.E.2d 723, 726-27 (Va. 2001) (same)). Here, Stacy Wheeler submitted a proper deemed election request as provided in section 1450(f)(3). *Wheeler*, 167 Fed. Cl. at 353 (finding that "Stacy Wheeler complied with the statutory requirements for a deemed election under section 1450(f)(3)").

[10] Even if the Court were to read section 1448(d)(3)(B) to require that the servicemember fail or refuse to make an election under section 1450(f)(3)(A), a servicemember who dies while on active duty can fail to make an election due to their untimely death.

the same manner as provided in section 1450(f)(3)." 10 U.S.C. § 1448(d)(3)(B). Here, because Stacy Wheeler complied with section 1450(f)(3)'s requirements for making a deemed election, the Court finds that she is entitled to an annuity under section 1448(d)(3)(B).

The Court notes that its statutory interpretation is supported by the relevant legislative history. Congress enacted the Uniform Services Former Spouses' Protection Act ("USFSPA") in 1982. *See* Pub. L. 97-252, §§ 1001-1006, 96 Stat. 718, 730-38 (1982). Its purpose was to address the division of military retirement benefits and allocation of SBP coverage in divorce proceedings and "to remedy some of the problems which are experienced by former spouses of members of the uniformed services." S. Rep. No. 97-502, at 1, 12 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 1596; *see* H.R. Rep. No. 97-749, at 165-68 (1982) (Conf. Rep.), *as reprinted in* 1982 U.S.C.C.A.N. 1569. The USFSPA was enacted in response to the Supreme Court decision in *McCarty v. McCarty*, 453 U.S. 210 (1981), a case in which the Supreme Court "held that the federal statutes then governing military retirement pay prevented state courts from treating military retirement pay as community property." *Mansell*, 490 U.S. at 584 (citing *McCarty*, 453 U.S. 210). Specifically, the act amended Title 10 of the United States Code "to require the Secretary concerned to comply with the terms of certain court orders in connection with the divorce, dissolution, annulment, or legal separation of a member or former member of a uniformed service" and "to permit[] Federal, State, and certain other courts, consistent with the appropriate laws, to once again consider military retired pay when fixing the property rights between the parties to a divorce, dissolution, annulment or legal separation."[11] S. Rep. No. 97-502, at 1. Subject to certain limitations, the act provided that "a former member's military retired pay would be subject to court orders issued incident to a divorce, dissolution, annulment or legal separation proceeding" and that "[t]he Service Secretaries would comply with such orders which direct the payment of a portion of that retired pay to a former spouse as alimony, as child support, or as the distribution of marital property." *Id.* at 4. In enacting the USFSPA to "allow[] military retirement benefits to be divided by state courts in divorce settlements[,] . . . Congress [] corrected a situation that [] left thousands of former military spouses in jeopardy and [took] yet another step toward economic recognition of the contributions homemakers make to marriages." 128 Cong. Rec. E 4510 (daily ed. Sept. 30, 1982) (statement of Rep. Gingrich) (reading Judy Mann's Washington Post column "Justice" into the congressional record). The Court's interpretation of sections 1448(d)(3) and 1450(f)(3) adheres to the purpose of the legislation, which is to allow state courts to consider military retirement benefits when determining property rights between a servicemember and a former spouse.

Moreover, Congress's reliance on state courts to adjudicate property rights between the parties to a divorce proceeding is fitting. It is well-established that "domestic relations are preeminently matters of state law . . . ." *Mansell*, 490 U.S. at 587; *accord Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890))). Had Congress sought to limit the validity of state court orders issued for the purpose of effectuating a deemed election request to

---

[11] The USFSPA added section 1408 to Title 10 of the United States Code and amended sections 1447, 1448, and 1450(f), to provide protection to former spouses of servicemembers under the SBP. *See* USFSPA §§ 1002-1003.

only those orders issued prior to the death of the servicemember, it could have easily done so.[12] However, Congress did not. *See generally* 10 U.S.C. §§ 1447-55. Rather, Congress gave former spouses one year from the date of the relevant court order or filing to request a deemed election, 10 U.S.C. § 1450(f)(3)(C); it did not otherwise place temporal limits on the court order or filing.

Relatedly, in the National Defense Authorization Act ("NDAA") for Fiscal Year ("FY") 1998, Congress required the Secretary of Defense to conduct a review of the USFSPA. NDAA for FY 1998, Pub. L. No. 105-85, § 643, 111 Stat. 1629, 1799-1800 (1997). Based on the Secretary's review, the SBP board viewed "as an area for possible future legislation, limiting the time period available for a former spouse to pursue modification to a divorce decree." [ECF 61-1] at 66. The board noted that, "[a]t present, this can occur many years after the date of the original decree--which can result in coverage being shifted from a current spouse to a former spouse - even after a member's death . . . [and that] [b]oard representatives are looking for some finality to the period in which a former spouse may pursue SBP through court-ordered modification." *Id.* Nevertheless, at the present time, the plain language of sections 1448(d)(3) and 1450(f)(3) allows for a deemed election based on a court order issued after the death of the servicemember.[13]

---

[12] The Court notes that another section of the USFSPA, section 1408(c), expressly limits state court authority regarding the treatment of military retirement pay as property subject to division during divorce proceedings. *See, e.g.*, 10 U.S.C. § 1408(c)(3) ("This section does not authorize any court to order a member to apply for retirement or retire at a particular time in order to effectuate any payment under this section."); *see also Mansell*, 490 U.S. at 590-91 (explaining the substantive limits that section 1408(c) places on state court authority to divide military retirement pay). "When Congress is 'silen[t] on [an] issue,' despite 'its certain awareness of' that issue, that 'is powerful evidence that Congress did not intend' preemption." *Conway v. United States*, 997 F.3d 1198, 1207 (Fed. Cir. 2021) (alterations in original) (quoting *Wyeth v. Levine*, 555 U.S. 555, 575 (2009)). Because Congress did not expressly limit state court authority to issue or modify a court order that provides former spouse SBP coverage following the death of a servicemember while on active duty, the Court will not read such a limit into the statute. If the statute were interpreted to *exclude* court orders issued after the death of the servicemember, then a former spouse who is otherwise entitled to receive an annuity under a state court order would be left without recourse in the event of the death of the servicemember while on active duty. Instead of imposing such a harsh outcome, Congress used language that permits a former spouse to rely on a state court order entitling the former spouse to an annuity regardless of whether the court order predates or postdates the servicemember's death. This makes sense because the death of an active duty servicemember is unpredictable.

[13] Ashley Wheeler also argues that "[e]quitable principles dictate preservation of [her] receipt of [MSG Wheeler's] survivor benefits," [ECF 54] at 28 (capitalization and emphasis omitted), because she "has relied [on the SBP benefits] for more than eight years [and the benefits] provide necessary support to her as she cares for MSG Wheeler's minor child while coping with medical conditions that have rendered her incapable of working in her profession," *id.* at 29 (citing AR 269-70). "The established rule . . . is that equity follows the law, . . . 'that, wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation.'" *Hedges v. Dixon Cnty*, 150 U.S. 182, 192 (1893) (quoting *Magniac v. Thomson*, 56 U.S. 281, 299 (1853)); *see also Armstrong v. Exceptional Child Ctr, Inc.*, 575 U.S. 320, 327 (2015); *I.N.S. v. Pangilinan*, 486 U.S. 875, 883 (1988). Because the Court's decision is rooted in the plain language of the SBP statute and the requirements flowing therefrom, the Court did not consider any equitable factors in deciding the outcome of this case.

IV.    **CONCLUSION**

For the reasons stated above, Stacy Wheeler's second MJAR, [ECF 53], is **GRANTED**. The government's motion to dismiss or, in the alternative, second cross-MJAR, [ECF 55], and Ashley Wheeler's motion in support of the government's cross-MJAR, [ECF 54], are **DENIED**. Additionally, Stacy Wheeler's motion to strike Ashley Wheeler's reply, [ECF 64], is **DENIED AS MOOT**. The Court considered the reply filed by Ashley Wheeler, [ECF 63], and determined that it did not change the outcome.

The ABCMR **SHALL** correct MSG Wheeler's records to reflect that Stacy Wheeler is his SBP beneficiary based on her satisfaction of the requirements for a deemed election under 10 U.S.C. § 1448(d)(3)(B). Furthermore, the Court directs the ABCMR to ensure that DFAS calculates the back payments to which Stacy Wheeler is entitled. The Clerk is **DIRECTED** to serve a certified copy of this Order and Opinion on the ABCMR at the following address:

Joseph Lister, Director
Department of the Army
Army Review Boards Agency
251 18th Street South, Suite 385
Arlington, VA 22202-3531

The Clerk of Court is **DIRECTED** to enter judgment for Stacy Wheeler and close this case.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge